O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KARIM CHRISTIAN KAMAL,<br><br>        Plaintiff,<br><br>        v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>        Defendants. | No. CV 17-01986-RGK (DFM)<br><br>Final Report and Recommendation of United States Magistrate Judge |

This Final Report and Recommendation is submitted to the Honorable R. Gary Klausner, United States District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.[1]

---

[1] The Court issued its original Report and Recommendation on August 2, 2018. See Dkt. 122. The parties filed objections (see Dkts. 123, 124, 125, and 126) to the Court's Report and Recommendation as well as responses to the objections (see Dkts. 127, 128, 129, and 130). The Court now issues this Final Report and Recommendation to clarify some of the original report's conclusions. Because these changes do not affect the Court's substantive analysis, the parties have not been given an opportunity to file additional objections.

# I.

## INTRODUCTION

Karim Christian Kamal ("Plaintiff") filed a civil rights complaint under 42 U.S.C. § 1983 against defendants Joseph Farrow, Dustin Sherman, Lisa Fossi, I.J. Tillman, Jose Haro, Gurwinder Rakkar, County of Los Angeles ("County"), Craig Cline, Arnel Dulay, Gail Farber, Rosemarie Brazal, Hurrell Cantrall LLP, Warren Williams, Thomas Hurrell, and Melinda Cantrall (together, "Defendants"). Plaintiff also claims that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Americans with Disabilities Act ("ADA"). Defendants filed six motions to dismiss and a special motion to strike under California's anti-SLAPP statute. For the reasons set forth below, the Court recommends that the motions to dismiss (Dkts. 49, 50, 54, 61, 70, 84) be granted, in part with prejudice and in part without prejudice, and the special motion to strike (Dkt. 52) be denied without prejudice.

# II.

## BACKGROUND

### A.  Factual Allegations

#### 1.  Underlying Motor Vehicle Accident and Road Conditions

On April 17, 2011, Plaintiff was involved in a motorcycle collision with another vehicle on Big Tujunga Canyon Road in the Angeles National Forest. See Dkt. 43 ("FAC") ¶ 30. The road is allegedly owned by the United States and managed by the County of Los Angeles ("County") and is located in the California Highway Patrol ("CHP") jurisdiction. See id. The collision occurred when the other vehicle made a "sharp, unmarked blind turn," veered into Plaintiff's lane, and collided with him. See id. Plaintiff alleges that although the road has a speed limit of 55 MPH, the turn cannot be safely driven at a speed greater than 30 MPH. See id. ¶ 31. Plaintiff also alleges that the turn

slopes at an angle "well over 8%, in excess" of the road plan provisions. Id.

Both Plaintiff and the other victim suffered severe injuries. See id. ¶ 30. About an hour after the collision, U.S. Forest Service rangers discovered Plaintiff and the other victim and phoned the County to have them airlifted to the nearest hospital. See id. ¶ 33. While waiting for evacuation, Plaintiff alleges that the paramedics "were all busy with [the other victim]," largely ignored Plaintiff's injuries, and repeatedly told him to "keep quiet." Id. ¶¶ 35-36. Plaintiff estimates he and the other victim were on the ground for over 1.5 hours before being transferred to the hospital. See id. ¶ 34. Once there, Plaintiff lost consciousness. See id. ¶ 36.

Plaintiff alleges that the delay in medical attention was caused by the County being "overwhelmed" by the other collisions in the area that day and the dearth of County resources. Id. ¶¶ 35, 38.

### 2. Investigation into Cause of Accident

Plaintiff contends that the CHP and its employees, Farrow, Sherman, Fossi, Tillman, Haro, and Rakkar, joined the County, Farber, Dulay, and Cline in scheming to obstruct the investigation of the accident and "cover up their criminal negligence" in failing to maintain or repair the road. See id. ¶¶ 77, 133. Specifically, Plaintiff alleges that Officer Sherman and Commissioner Farrow worked to "pi[n] the blame on [the other victim]" and "erase any evidence that would indicate that other factors may have caused or contributed to the collision." Id. Sherman did this by relying on the testimony of Luis Osorio, who was not at the scene of the collision but nonetheless testified that the other victim was driving at a speed of 65-70 MPH. See id. Plaintiff disputes this finding, citing to a "United States reconstruction expert" who found that the other victim was driving at a much lower speed of around 45 MPH. See id. ¶ 47.

Plaintiff further alleges that Sherman lied about when he met and

interviewed Plaintiff and "harassed and attempted to pressure" Plaintiff to make statements pinning the blame on the other victim. See id. ¶¶ 78-81. Having failed to obtain a statement from Plaintiff, Sherman, along with Farrow, Farber, Cline, and Dulay, wrote out a false and deliberately incomplete collision report. See id. ¶¶ 81, 132.

Plaintiff also alleges that the investigation itself was tainted. "Crucial evidence" was not properly marked, and the CHP allegedly deprived Plaintiff of any information so he could not contradict the traffic collision report. Id. ¶ 83; see also id. ¶ 131.

### 3. Lawsuits Arising from Accident

#### a. State Court Lawsuit

In May 2012, Plaintiff filed a personal injury lawsuit in Los Angeles Superior Court against the other victim, the County, and Farber, who directed the County's Department of Public Works at the time of the accident. See id. ¶ 45. The other victim filed a separate lawsuit against the County, and the two actions were consolidated in September 2012. See id. Both lawsuits alleged that "the dangerous condition of the road caused the injuries." Id. The County was represented by Williams, a lawyer at the law firm Hurrell Cantrall LLP. See id. ¶ 49.

Farber successfully demurred to Plaintiff's state-court action, and the County successfully disposed of the case at summary judgment by "claim[ing] design immunity" and "argu[ing] that no sign warning of the blind turn and recommending a lower speed was required ahead of the subject turn." Id. ¶ 46. In reaching this ruling, the state court allegedly relied on photographs of the road that the County introduced through Williams's declaration—photos that Plaintiff alleges were "instrumental in the Court's ruling." Id. ¶ 48. These photos show road signage a few miles from the location of the accident as part of an explanation for why no additional signs were needed. See id. ¶ 50.

Plaintiff appealed the trial court's findings, but the higher courts upheld the ruling. See id. ¶ 46.

Plaintiff alleges several instances of misconduct during the course of this state court lawsuit:

- Williams acted dishonestly in introducing the photographs of the road by "purporting to merely authenticate the photographs" but actually "appear[ing] to be a witness." Id. ¶¶ 50-51, 112-18.

- The County tampered with and destroyed signage along the road that violated the California Manual on Uniform Traffic Control Devices. See id. ¶¶ 52-54, 108-10.

- The County failed to produce certain requested documents, including its fire and sheriff departments' reports and records/transcripts of communications between Plaintiff and first responders. See id. ¶¶ 55-56, 119-21.

- The County failed to produce financial records regarding maintenance of the road. See id. ¶ 57.

- The County spread "unfounded rumors" in influential circles that Plaintiff was "mentally ill." Id. ¶ 61.

- The County improperly claimed that the road design was lawfully designed and approved in 1943. See id. ¶¶ 49, 105.

- When deposed, County witnesses, Dulay and Cline did not reveal that the road was not properly constructed as designed. See id. ¶¶ 49, 133. Instead, they and Farber remained "silent." Id.

    b.    Pending Federal Lawsuit

During the pendency of the state-court lawsuit, Plaintiff filed a separate lawsuit in the Central District of California alleging that the United States was

liable for his injuries.[2] See id. ¶¶ 61-62. Plaintiff contends that information obtained during discovery in the federal case shows that the County, Farber, Dulay, and Cline, and their attorneys, Hurrell Cantrall LLP and Williams, defrauded Plaintiff in the state court proceedings. See id. ¶ 63.

Specifically, Plaintiff argues that the County Defendants and their attorneys defrauded Plaintiff in the following ways:

- The County and its attorneys deliberately failed to produce a 1930 special use permit to mislead Plaintiff into believing that the road only needed to conform to the design specification of the 1943 permit. See id. ¶¶ 40, 103.

- The County and its attorneys intentionally withheld the County's application for the 1943 special use permit, in which it admitted to not having yet finished the plans for the whole road. See id. ¶¶ 66, 106. Plaintiff adds that the United States nevertheless granted the County's permit application. See id. ¶ 66.

- The County's withholding of the 1943 permit application deprived him of arguments in the state-court lawsuit that the road was improperly constructed with an 8% grade, while the permit only approved a 7% grade at any given point. See id. ¶¶ 67-68.

- Williams and Hurrell Cantrall LLP intentionally misled Plaintiff into believing that the County, not Williams, originated the photos of the road signage on which the state court purportedly relied to grant the County's motion for summary judgment. See id. ¶¶ 69-70, 112-18.

---

[2] The district court entered judgment against Plaintiff on January 4, 2018. See Kamal v. United States, No. CV 15-1585-FMO (JC) (C.D. Cal. Jan. 4, 2018), Dkt. 213. Plaintiff has appealed the matter to the Ninth Circuit. See id., Dkt. 214.

6

- The County withheld records of communications between Plaintiff and first responders. See id. ¶ 73.
- The County withheld certain financial documents regarding road funding and the County's failure to spend any federally-obtained dollars to remedy the road condition where the accident occurred. See id. ¶ 74-75.

Having reviewed the collision statistics/reports ("SWITRS") produced in the federal lawsuit, Plaintiff also alleges that the statistics produced by the County and by the CHP in the state-court lawsuit were "doctored" to defraud him and others and to prevent him from "presenting his claims and defenses that the dangerous condition of the road caused the collision." Id. ¶¶ 84-91, 93, 122-30.

**B.** **Procedural Background**

Plaintiff filed his complaint on March 13, 2017, and filed the FAC on July 19, 2017. In the FAC, Plaintiff names as defendants: (1) Farrow; (2) Sherman; (3) Fossi; (4) Tillman; (5) Haro; (6) Rakkar; (7) the County; (8) Cline; (9) Dulay; (10) Farber; (11) Brazal; (12) Hurrell Cantrall LLP; (13) Williams; (14) Hurrell; and (15) Cantrall. See Dkt. 43 ("FAC") ¶¶ 6-25.[3-4] Plaintiff names Cline, Dulay, Farber, and Brazal in their individual and official capacity and sues the remaining defendants in their individual capacity only. See id.

Plaintiff alleges seven causes of action against various groups of

---

[3] All page references are to the CM/ECF pagination.

[4] Defendants Farrow, Sherman, Fossi, Tillman, Haro, and Rakkar are collectively referred to herein as "CHP Defendants." See FAC ¶ 27. Defendants County of Los Angeles, Cline, Dulay, Farber, and Brazal are collectively referred to as "County Defendants." See id. ¶ 26. And Defendants Hurrell Cantrall LLP, Williams, Hurrell, and Cantrall are together referred to herein as "Attorney Defendants." See id. ¶ 28.

7

defendants: (1) violation of RICO under 18 U.S.C. § 1962(c); (2) conspiracy to violate RICO under 18 U.S.C. § 1962(d); (3) a 42 U.S.C. § 1983 claim for violation of due process under the Fourteenth Amendment; (4) a § 1983 claim for race and national origin discrimination in violation of equal protection under the Fourteenth Amendment; (5) a <u>Monell</u>-related § 1983 claim; (6) conspiracy to violate civil rights (due process and equal protection); and (7) violation of the ADA. <u>See</u> <u>id.</u> ¶¶ 97-178.

At the core of Plaintiff's RICO and § 1983 claims against County, Attorney, and CHP Defendants are twenty predicate acts, summarized as follows:

- Producing only the 1943 special use permit in response to Plaintiff's Requests for Production and concealing the same in the state-court lawsuit (Predicate Acts 1-2);

- Omitting information related to the 1943 Special Use Permit in Cline's declaration (Predicate Act 3);

- Concealing a letter to the United States Forest Service noting the County's special use permit application was incomplete, lacking complete plans for the road (Predicate Act 4);

- Destroying signage evidence, objecting to introduction of rebuttal evidence, and omitting a destroyed sign from traffic sign inventory to conceal the spoliation (Predicate Acts 6-8);

- Introducing misleading photographic evidence through Williams's declaration in support of the County's motion for summary judgment in the prior state-court action (Predicate Acts 9-11);

- Failing to produce the County's sheriff and fire departments' accident reports and transcripts/recordings of conversations among first responders to the accident (Predicate Acts 12-13);

8

- Producing doctored SWITRS in response to discovery requests in the prior state court action and to subpoenas in both the prior state court and federal court actions (Predicate Acts 14-16);
- Preventing accident-related evidence from being properly marked and recorded (Predicate Act 19(a)[5]);
- Drafting a false accident collision report (Predicate Act 17);
- Providing false deposition testimony in the prior state-court proceeding (Predicate Act 18);
- Procuring two fraudulent judgements against Plaintiff in the state-court proceeding (Predicate Act 19(b)); and
- Spreading rumors that Plaintiff is mentally ill (Predicate Act 20).

Defendants moved to dismiss the FAC. See Dkts. 48, 49, 50, 54, 61, 70, 84. The County, Cline, Dulay, and Farber also filed a special motion to strike under pursuant to California Code of Civil Procedure § 425.16. See Dkt. 52.

## III.

## LEGAL STANDARD

A motion to dismiss shall be granted when the plaintiff's allegations fail "to state a clam upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). All allegations of material fact in the complaint "are taken as true and construed in the light most favorable" to the non-moving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). "The court need

---

[5] Because Plaintiff alleged two different acts as "Predicate Act 19," see FAC ¶¶ 131-32, 134, for clarity, the Court refers to FAC ¶¶ 131-32 as "Predicate Act 19(a)" and FAC ¶ 134 as "Predicate Act 19(b)."

not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Id. Similarly, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Id. Mere legal conclusions "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Rather, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and afford Plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). The Court should grant leave to amend if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. See id. at 1130-31. However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. See Cato v. United States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

///
///
///

# IV.

# REQUESTS FOR JUDICIAL NOTICE

Although, as a general rule, a district court may not consider materials beyond the pleadings in ruling on a Rule 12(b)(6) motion, a matter that is properly the subject of judicial notice may be considered along with the complaint when deciding a motion to dismiss. See Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Courts may take judicial notice of "undisputed matters of public record including documents on file in federal or state courts." Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted). "[D]ocuments not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents." Id.

Here, various defendants request that the Court take judicial notice of filings and orders in the prior state-court action. See Dkts. 51, 62. Defendants also request that the Court take judicial notice of the California Court of Appeal's March 8, 2018, Order denying Plaintiff's motion to recall remittitur in the state-court action. See Dkt. 99-1. Because these documents were publicly filed in or by the state courts in the prior state-court action, the Court grants Defendants' requests for judicial notice solely for consideration for the instant motions.

Plaintiff similarly requests that the Court take judicial notice of certain declarations, discovery responses, and documents filed in related federal and state court actions. See Dkts. 72-4, 87, 103-1. While Plaintiff has not explained

how such documents "have a direct relation to matters at issue" in the instant motions, the Court nevertheless takes judicial notice of those documents filed in the prior state and federal court actions and in Plaintiff's separate federal lawsuit, <u>Kamal v. Cantil-Sakauye</u>, No. 17-4555, Dkt. 1 (C.D. Cal. June 20, 2017). <u>See</u> <u>U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.3d 244, 248 (9th Cir. 1992). At this stage, the Court expressly declines to consider the truthfulness of the judicially-noticeable documents.

## V.

## DISCUSSION

Given the substantial overlap among legal arguments raised in Defendants' motions, the Court addresses their motions collectively.

**A.** ***Rooker-Feldman* Jurisdictional Bar**

Defendants contend that the Court lacks subject matter jurisdiction to entertain Plaintiff's claims because they are barred by the <u>Rooker</u>-<u>Feldman</u> doctrine. <u>See</u> Dkt. 50 ("Attorneys MTD") at 12-17; Dkt. 49 ("County MTD") at 29-31; Dkt. 54 ("CHP MTD") at 17. "[T]he <u>Rooker</u>-<u>Feldman</u> doctrine bars suits 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" <u>Carmona v. Carmona</u>, 603 F.3d 1041, 1050 (9th Cir. 2010) (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indust. Corp.</u>, 544 U.S. 280, 284 (2005)). The doctrine applies when "the action contains a forbidden de facto appeal of a state court decision." <u>Bell v. City of Boise</u>, 709 F.3d 890, 897 (9th Cir. 2013). "A de facto appeal exists when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'" <u>Id.</u> (citing <u>Noel v. Hall</u>, 341 F.3d 1148, 1164 (9th Cir. 2003)). If the federal action constitutes a de facto appeal, district courts are barred from deciding not only the issues decided by the state court,

but also any other issues that are "inextricably intertwined" with the state court's decision. Noel, 341 F.3d at 1158; Bell, 709 F.3d at 897. "To determine whether an action functions as a [forbidden] de facto appeal of a state court judgment, [courts] 'pay close attention to the relief sought by the federal-court plaintiff.'" Cooper v. Ramos, 704 F.3d 772, 777-78 (9th Cir. 2012) (quoting Bianchi v. Rylaarsdam, 334 F.3d 895, 900 (9th Cir. 2003)) (emphasis in original). If "the relief requested in the federal action would effectively reverse the state court decision or void its ruling," the claims are "inextricably intertwined" and the federal action must be dismissed for lack of subject-matter jurisdiction. Cooper, 704 F.3d at 779 (internal citation omitted).

Rooker-Feldman does not, however, bar a federal suit to set aside a state-court judgment if that judgment was obtained by extrinsic fraud. See Kougasian v. TMSL, Inc., 359 F.3d 1136, 1141 (9th Cir. 2004) (noting "[e]xtrinsic fraud" is "not an error by that court" but "a wrongful act committed by the party or parties who engaged in the fraud"). But if the parties raised the issue of fraud before the state court, and the state court determined that no fraud occurred, then Rooker-Feldman still applies. See Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 860 (9th Cir. 2008).

Here, Plaintiff's RICO, § 1983, and conspiracy claims are facially barred. While the FAC does not directly dispute the state court's rulings in this action, Plaintiff seeks the same relief that he would have recovered had he prevailed in the state-court action. Plaintiff openly admits in the FAC that he seeks "economic damages in an amount no less than two million one hundred twenty five thousand dollars to defend against the sham claims and defenses of the County in the LASC action, to seek compensation for his injuries, to discover evidence that is material and relevant to his case and to establish his claims." FAC ¶¶ 136, 142 (emphasis added). Put another way, Plaintiff apparently seeks to recover his fees and costs from the prior action, which he

13

lost, and recovery for his personal injuries sustained from the accident—which he also already litigated in the state court action.[6] See id. ¶ 45. Plaintiff's contention that the <u>Rooker</u>-<u>Feldman</u> doctrine does not apply because the claims alleged are distinct from those raised in the state-court action is immaterial. A party need not directly challenge a state court's decision to be foreclosed by the <u>Rooker</u>-<u>Feldman</u> doctrine. <u>See, e.g.</u>, <u>Reiner v. Cunningham</u>, No. 11-8353, 2011 WL 5877552, at *2 (C.D. Cal. Nov. 18, 2011) ("It is immaterial that Plaintiff is not directly challenging the state court decision but has framed his claim as a constitutional challenge to the decision."). "[P]ay[ing] close attention to the <u>relief</u> sought by [Plaintiff]," the Court concludes that Plaintiff's civil rights and civil RICO claims seek relief from the state court's prior adverse judgment, which resulted in his incurrence of over two million dollars in costs, fees, and other damages. <u>Cooper</u>, 704 F.3d at 777-78 (emphasis in original) (internal citations omitted).

Plaintiff invokes the extrinsic fraud exception to rescue his claims. <u>See</u> Dkt. 64 ("Opposition to County MTD") at 29-30. Specifically, Plaintiff contends that Defendants' fraud included "abusing public office, public trust, violating the oath of office, making misleading statements and engaging in conduct that deprived the plaintiff from fully presenting all his defenses," which included "partial production of documents" during discovery, shielding "the discovery of [Williams] as a material witness," and "producing doctored official records." Opposition to County MTD at 30; Dkt. 66 ("Opposition to

---

[6] Plaintiff denies that he seeks "compensation for his physical injuries or emotional distress flowing from the physical injuries or the collision." Opposition to Attorneys MTD at 14. Even so, Plaintiff fails to state what relief he does seek and how such relief is distinct from that which the state-court judgment already denied. Absent such allegations, the Court construes the FAC as pleaded.

Attorneys MTD") at 13-14; Dkt. 65 ("Opposition to CHP MTD") at 65. But where, as here, the state court already considered a plaintiff's allegations of fraud, this exception does not apply. See Reusser, 525 F.3d at 860. Plaintiff alleges that Attorney Defendants and County Defendants fraudulently conspired to, and did, destroy and conceal a road sign and mislead Plaintiff and the state court of the same through a witness declaration and accompanying photographs. See FAC ¶¶ 108-18 (describing Predicate Acts 6-11). Plaintiff admits that he "objected to the photographs" and "brought to both [Williams's] and the court's attention that [Williams] appeared to be a witness." Id. ¶ 51. Plaintiff separately raised the signage issue by filing a supplemental brief, but the state court struck that brief on procedural grounds. See id. ¶ 53. After the court entered summary judgment, Plaintiff appealed the ruling to the California Court of Appeal and California Supreme Court, both of which upheld the ruling. See id. ¶ 59. Similarly, Plaintiff alleges that County and Attorney Defendants deliberately withheld certain permit-related documents during the state court proceeding to mislead the court. See id. ¶¶ 65, 103-07 (describing Predicate Acts 1-4). Plaintiff also raised these grievances to the state courts, which rejected Plaintiff's claims on procedural grounds. See id. ¶ 65.

Additionally, during the pendency of this action, the California Court of Appeal issued its decision on Plaintiff's motion to recall remittitur, in which the state appellate court determined, among other findings, that Plaintiff failed to show "extrinsic fraud" in the County's failure to produce its fire department's report and in the CHP's production of allegedly inaccurate SWITRS. See Dkt. 99-1 at 32-33 (excerpt of Kamal v. Cty. of L.A., No. B263531 (Cal. Ct. App. March 8, 2018). Unlike in Kougasian, Plaintiff was actually afforded the opportunity to, and did, "presen[t] his claim[s] in court." Kougasian, 359 F.3d at 1140 (quoting Wood v. McEwen, 644 F.3d 797, 801

(9th Cir. 1981)); see also Menna v. Radmanesh, No. 14-355, 2014 WL 6892724, at *9 (C.D. Cal. Oct. 7, 2014) (noting the "false declaration in Kougasian constituted extrinsic fraud not merely because it was false, but because it was presented in such a manner as to prevent plaintiff from challenging it before the state court relied on it for its decision."). Accordingly, to the extent Plaintiff's civil RICO and civil rights claims rely on these acts— i.e., Predicate Acts 1-11, 12-13 (as to the County's fire department reports), and 14-15—such claims are outright barred by the Rooker-Feldman doctrine, as they were already raised to and considered by the state courts.

As to Plaintiff's remaining examples of "extrinsic fraud," they are easily distinguishable from the conduct in Kougasian, where the defendants filed a perjured declaration at the last minute and intentionally withheld witness contact information to prevent the plaintiff from deposing or questioning the declarant. See Kougasian, 359 F.3d at 1139-40. Here, Plaintiff's only specific allegations are that Defendants "led [Plaintiff] and the LASC to believe that the road was entirely designed and constructed in 1943 only, thus preventing [Plaintiff] from defending against the claim of design immunity," "conceal[ed] that [Williams] was a witness in the case," and "produc[ed] doctored official records." Opposition to County MTD at 30; Opposition to CHP MTD at 5; see also Opposition to Attorneys MTD at 13-14. With the exception of the allegedly doctored SWITRS, Plaintiff alleges conduct reflective of vigorous and contentious litigation. See, e.g., FAC ¶¶ 65 (County successfully opposing request for appellate review of 1930 permit); 70, 73 (County disputing Plaintiff's motions to compel production of "all photographs depicting the road" in the prior federal court lawsuit). Plaintiff provides few, if any, facts suggesting that Defendants actually had the demanded documents in their custody, control, or possession, much less that Defendants fraudulently withheld them. Moreover, unlike in Kougasian, nothing in the FAC suggests

16

that Plaintiff requested but was prevented from eliciting witness testimony from Williams. Even Plaintiff's conclusory allegations of the doctored SWITRS and accident report cannot rescue his claims, because "allegations of perjury during legal proceedings do not generally provide a basis for extrinsic fraud." <u>Menna</u>, 2014 WL 6892724, at *9 (citing <u>Wood</u>, 644 F.2d at 801 (holding that plaintiff's allegation of perjury did not raise an issue of extrinsic fraud)).[7]

In sum, Plaintiff has not alleged a plausible claim of extrinsic fraud that could take his civil rights and civil RICO claims arising from his prior state-court lawsuit outside of the <u>Rooker</u>-<u>Feldman</u> jurisdictional bar. Insofar as Plaintiff's civil RICO and civil rights claims arise from allegations of fraud already raised to and considered by the state courts, <u>see</u> FAC ¶¶ 103-27 (describing Predicate Acts 1-11, 12-13 (as to the County's fire department's reports), and 14-15), such claims are dismissed with prejudice. To the extent that Plaintiff's claims rely on Defendants' conduct in the state-court action not already raised to and considered by the state court, <u>see</u> FAC ¶¶ 119-21, 131-33 (describing Predicate Acts 12-13, 17-18, 19(a)), those claims are dismissed without prejudice. Finally, Plaintiff's claims that stem solely from Defendants' conduct in the prior federal lawsuit, <u>see</u> FAC ¶¶ 128-30 (describing Predicate Act 16), are not barred by this doctrine.

///
///
///
///

---

[7] Regardless, as previously discussed, Plaintiff already raised the issue of the CHP's production of allegedly inaccurate SWITRS to the state appellate court, which concluded that Plaintiff failed to show extrinsic fraud there. <u>See</u> Dkt. 99-1 at 32-33.

**B.   Res Judicata**

Next, Defendants seek dismissal of Plaintiff's claims under res judicata or claim preclusion.[8] See County MTD at 14-16; Attorneys MTD at 17-21; CHP MTD at 19-20.

Under 28 U.S.C. § 1738, a federal court must "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Accordingly, federal courts must apply state doctrines of claim and issue preclusion to determine the preclusive effect of prior state adjudications in subsequent federal litigation, including under § 1983. See id. at 83-85. When a claim is precluded under one of these doctrines, the claim is subject to dismissal under Rule 12(b)(6). See McHenry v. Jordan, 81 F.3d 169 (9th Cir. 1996) (unpublished) (noting that "[t]he district court properly treated the [] motion to dismiss as a Rule 12(b)(6) motion (rather than as a motion for summary judgment under Rule 56), notwithstanding the fact that it took judicial notice of prior proceedings"). Here, Plaintiff's underlying state-court claim was brought in California, so California law applies. See Gonzales v. Cal. Dep't of Corr., 739 F.3d 1226,

_____

[8] County Defendants also seek dismissal of parts of Plaintiff's action on grounds of issue preclusion. See County MTD at 27-29. But it is unclear for which claims or issues, and to what extent, County Defendants seek preclusion under collateral estoppel as opposed to under res judicata. Instead, County Defendants assert in conclusory fashion that "[t]he doctrines of claim and issue preclusion prevent successive re-litigation of these same claims, issues, and allegations here." Id. at 29. Without more specificity, the Court cannot conclude that issue preclusion bars the issues pleaded in the FAC. See Hong Sang Mkt., Inc. v. Peng, 20 Cal. App. 5th 474, 489 (2018) ("A party who asserts . . . issue preclusion as a bar to further litigation bears the burden of proving that the requirements of the doctrine are satisfied."). County Defendants have not shown how issue preclusion applies here.

1232-33 (9th Cir. 2014) (applying California doctrine of res judicata).

California's preclusion doctrines bar subsequent actions when three requirements are met: (1) the second lawsuit involves the same cause of action (claim preclusion) or issue (collateral estoppel) as the first, (2) there was a final judgment on the merits in the first lawsuit, and (3) the party to be precluded was a party, or in privity with a party, to the first lawsuit. See Boeken v. Philip Morris USA, Inc., 48 Cal. 4th 788, 797 (2010); see also San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2009) (summarizing California law for claim preclusion). Under California law, "[a] valid final judgment on the merits in favor of a defendant serves as a complete bar to further litigation on the same cause of action." Slater v. Blackwood, 15 Cal. 3d 791, 795 (1975). "California has consistently applied the 'primary rights' theory, under which the invasion of one primary right gives rise to a single cause of action." Id.; see also City of Martinez v. Texaco Trading & Transp., Inc., 353 F.3d 758, 762 (9th Cir. 2003) ("[A] cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty. Claims are 'identical' [for the purposes of California's res judicata rule] if they involve the same 'primary right.'"). "[U]nder the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." Boeken, 48 Cal. 4th at 798. Where claims "either have been or should have been raised in state court," a plaintiff is precluded from raising them later. Manufactured Home Cmtys., Inc. v. City of San Jose, 420 F.3d 1022, 1032 (9th Cir. 2005).

Here, the parties dispute whether the claims in the FAC stem from the same "primary right" as those already litigated in the prior state-court action.

19

See CHP MTD at 19; Attorneys MTD at 18. CHP Defendants argue that this "primary right" is "Plaintiff's claim that [the] roadway where he was injured was a dangerous condition of public property." CHP MTD at 19-20. County Defendants similarly claim that numerous of Plaintiff's factual bases alleged in the FAC were already, or should have been, litigated in the prior action. See County MTD at 27-29 (referencing misrepresentations regarding the permit, spoliation of evidence, doctoring of signage, obstruction of discovery, and "procure[ment of] two judgment by fraud against [Plaintiff].")". Attorney Defendants likewise contend, albeit more specifically, that Plaintiff already had the opportunity to litigate any issues regarding the road photographs and road permits. See Attorneys MTD at 17-21.

Plaintiff, on the other hand, argues that the claims are not precluded because the "harm suffered in both actions is not the same," and while the two actions may "share common facts," they do not involve the same primary right. See Opposition to County MTD at 24. Plaintiff clarifies that he "is not seeking compensation for his physical injuries or emotional distress flowing from the physical injuries or the collision . . . for the loss of income he suffered as a result of the injury . . . [or] to have the court find that the road was in a dangerous condition." Opposition to Attorneys MTD at 14. Instead, he claims economic damages because Defendants "obstructed and hindered, in violation of United States criminal laws," and violated his rights to equal protection and due process. Id. at 15. Notwithstanding primary rights, Plaintiff disputes that he could have raised the alleged "RICO activities" in state court because, with exception to the alleged destruction of evidence, "they were discovered . . . after entry of the judgment." Opposition to County MTD at 24. Further, the state court never issued "findings regarding fraud," so Plaintiff alleges that his rights to do so here remain intact. Opposition to CHP MTD at 6.

The touchstone of whether a subsequent claim invokes the same primary

20

right is the "harm suffered." See Boeken, 48 Cal. 4th at 798. Here, Plaintiff alleges throughout the FAC that he is entitled to over $2,000,000 in damages for Defendants' RICO and civil rights violations, because he had to "defend against the sham claims and defenses of the County in the LASC action, to seek compensation for his injuries, [and] to discover evidence that is material and relevant to his case and to establish his claims." FAC ¶¶ 136, 142, 170. Inherent in Plaintiff's allegations of harm suffered are the fees and costs incurred as a result of his unsuccessful state-court action and general "compensation for his injuries." Id. That Plaintiff now seeks recovery of the same monetary damages under a different legal theory is inconsequential for res judicata purposes. See Shalaby v. Bernzomatic, 281 F.R.D. 565, 572 (S.D. Cal. 2012), aff'd, 584 F. App'x 419 (9th Cir. 2014) (noting "judgment in a Prior Federal Action precludes another action based on the same facts and asserted injury even though the subsequent action asserts a different theory to justify recovery"). Importantly, while Plaintiff alleges in conclusory fashion that "[t]he injuries alleged are not the same," Plaintiff provides no factual support to suggest this is true. See Opposition to Attorneys MTD at 14. Aside from generalized allegations of "humiliation," "ridicule," "mental grief," "embarrassment," "emotional suffering," and "economic damages" in amounts ranging from $500,000 to $15,000,000, Plaintiff states no facts to suggest that the "compensatory damages" Plaintiff seeks here are distinct from those sought in the prior state-court action. FAC ¶¶ 95, 147, 156, 170, 178. Absent such facts, the Court concludes that Plaintiff's civil RICO and civil rights claims invoke, at least to some extent, the same primary rights as his prior claims.

Even if Plaintiff were to have alleged harms independent of those raised in the state-court lawsuit, several of Plaintiff's claims would still have been barred by res judicata because they were or could have been raised in the prior

lawsuit. See Constantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir. 1982) (noting that a plaintiff "does not avoid the bar of res judicata merely because he now alleges conduct . . . not alleged in his prior suit"). For example, with regard to the allegedly fraudulent inclusion of Williams's declaration, and the accompanying photographs of the road, Plaintiff admits that he "objected to the photographs" and even brought the issue to the trial court's attention in his opposition to the County's motion for summary judgment.[9] FAC ¶ 51. The Court is likewise unpersuaded by Plaintiff's contention that he first "discovered the 1930 permit after entry of the LASC judgment and while it was on appeal." Opposition to Attorneys MTD at 15. Nothing prevented Plaintiff from discovering the alleged fraud earlier—e.g., by requesting documents from the United States Forest Service in the state-court action, just as he did in the later federal action. Similarly, Plaintiff does not allege how he was fraudulently prevented from broaching the signage tampering issue in his summary judgment briefing. See FAC ¶¶ 108-11; see also Mazzocco v. Lehavi, No. 14-2112, 2015 WL 12672026, at *9 (S.D. Cal. Apr. 13, 2015) ("Claim preclusion applies to a judgment even if evidence was fraudulently suppressed in the first action" because "suppression of evidence is intrinsic fraud, which does not 'deprive the opposing party of the opportunity to appear and present his case'" (internal citations omitted)); Eichman v. Fotomat Corp., 147 Cal. App. 3d 1170, 1176 (1983) ("If the aggrieved party

---

[9] The Court takes judicial notice of documents filed in the earlier state court action to determine what issues were previously litigated. See Fed. R. Evid. 201(c); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of court filings to determine what issues were actually litigated in prior action for purposes of issue preclusion); Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of state court decision and related filed briefs for purposes of determining prior judgment's preclusive effect).

had a reasonable opportunity to appear and litigate his claim or defense, fraud occurring in the course of the proceeding is not a ground for equitable relief. The theory is that these matters will ordinarily be exposed during the trial by diligence of the party and his counsel . . . ." (citation omitted)). Instead, Plaintiff waited until after the motion for summary judgment was under submission to file a "supplemental brief," which the state court struck without ruling on its merits. FAC ¶ 111.

In sum, the Court finds that Plaintiff's civil RICO and civil rights causes of action are barred by res judicata and accordingly dismisses those claims without prejudice (unless previously noted otherwise). To the extent that Plaintiff's claims rely on Williams's allegedly fraudulent declaration and attached photographs of the road (Predicate Acts 9-11) or on Plaintiff's belated discovery of the 1930 road permit and permit application (Predicate Acts 1-4), those claims are dismissed with prejudice because they were or could have been litigated in the prior action.

## C.   *Noerr-Pennington* Doctrine

Defendants contend that Plaintiff's factual allegations stem from petitioning conduct in the prior state-court action and, thus, are barred by the Noerr-Pennington doctrine. See CHP MTD at 21; County MTD at 29; Attorneys MTD at 21-24.

"The Noerr-Pennington doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved." White v. Lee, 227 F.3d 1214, 1231 (9th Cir. 2000). The conduct protected by the doctrine includes "access to the courts." Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). For purposes of Noerr-Pennington, petitioning includes all "litigation activities which constitute 'communication[s] to the court,'" such as

23

complaints, answers, and "'other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something.'" Sosa v. DIRECTV, Inc., 437 F.3d 923, 933 (9th Cir. 2006) (quoting Freeman v. Lasky, Hass & Cohler, 410 F.3d 1180, 1184 (9th Cir. 2005)); see also Freeman, 410 F.3d at 1184 ("Noerr-Pennington immunity . . . also appl[ies] to defensive pleadings,. because asking a court to deny one's opponent's petition is also a form of petition."). While discovery itself is not a "communication to the court, and therefore not a petition," it is nevertheless "conduct incidental to" a petition and thus protected by Noerr-Pennington if the petition itself is protected. Freeman, 410 F.3d at 1184-85 (citation omitted).

Although the doctrine originated in the antitrust context, it is based on the First Amendment, and now applies to litigation in all contexts, including civil RICO and § 1983 claims. See, e.g., Sosa, 437 F.3d at 942 (holding Noerr-Pennington doctrine applicable to civil RICO claim); Empress LLC v. City & County of San Francisco, 419 F.3d 1052, 1056-57 (9th Cir. 2005) (doctrine applies to § 1983 claim alleging conspiracy between private individuals and government actors); Affordable Hous. Dev. Corp. v. City of Fresno, 433 F.2d 1182, 1193 (9th Cir. 2006) (doctrine immunizes government officials and employees from federal claims under § 1983); Lynn v. Friedenthal, No. 09-08717, 2011 WL 6960823, at *3, *8 (C.D. Cal. Dec. 2, 2011) (applying doctrine to §§ 1983 and 1985 claims based on litigation activities of attorneys); Nazir v. United Air Lines, No. 09-01819, 2009 WL 2912518, at *3-5 (N.D. Cal. Sept. 9, 2009) (applying doctrine to § 1981 claims); Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 645 (9th Cir. 2009) (applying Noerr-Pennington immunity to "governmental entity or official" in an eminent domain proceeding). Government entities, like private individuals, may also invoke Noerr-Pennington immunity. See Manistee Town Ctr. v. City of Glendale, 227

F.3d 1090, 1092 (9th Cir. 2000) (applying <u>Noerr</u>-<u>Pennington</u> doctrine to § 1983 claim against governmental entity); <u>Kearney</u>, 590 F.3d at 644-45 (noting <u>Noerr</u>-<u>Pennington</u> doctrine may apply to government entities in litigation).

Courts apply a three-part test to determine whether a defendant's conduct is immunized by <u>Noerr</u>-<u>Pennington</u>: "(1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity." <u>Kearney</u>, 590 F.3d at 644 (citing <u>BE & K Constr. Co. v. NLRB</u>, 536 U.S. 516, 535-37 (2002)). First, because Plaintiff challenges the litigation activity of the County, its employees, and the law firm and attorneys that represented it in the state court and prior federal action, the "success of [Plaintiff's] lawsuit would constitute a burden on petitioning rights," at least as to County Defendants and Attorney Defendants.[10] <u>Id.</u> at 645. Second, nearly all of the alleged wrongful activities constitute petitioning activity or incidental conduct thereto. For example, Plaintiff's alleged predicate RICO acts consist of Defendants' failure to produce various documents and records during discovery in the state and prior federal court actions, spoliation of evidence to be used in the state court proceeding, submission of misleading photographs and a misleading declaration, production of doctored collision reports, provision of false testimony, and procurement of two judgments against Plaintiff. <u>See</u> FAC ¶¶ 103-34. Finally, as indicated by the cases cited above,

---

[10] Plaintiff's argument that the <u>Noerr</u>-<u>Pennington</u> doctrine, if applicable, would apply only to the County and Farber is incorrect. <u>See</u> Opposition to County MTD at 26 n.13. While <u>Noerr</u>-<u>Pennington</u> immunity stems from the First Amendment petition right, which "belongs to the defendants in the original case, . . . their employees, law firms and lawyers, as their agents in that litigation, get to benefit as well." <u>Freeman</u>, 410 F.3d at 1186.

nothing in the statutes under which Plaintiff sues proscribes the type of litigation activity of which he complains. See, e.g., Williams v. Jones & Jones Mgmt. Grp., Inc., No. 14-2179, 2015 WL 349443, at *9-11 (applying Noerr-Pennington doctrine to claims under RICO and 42 U.S.C. §§ 1981, 1983, 1985, and 1986).

The Noerr-Pennington doctrine will not protect petitioning activity that is "ostensibly directed toward influencing governmental action" but is in fact a "mere sham." Eastern R.R. Pres. Conf. v. Noerr Motor Freight, 365 U.S. 127, 144 (1961). "A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 n.5 (1993). Here, the FAC unequivocally alleges that County Defendants' and Attorney Defendants' litigation-related petitioning in the state courts was successful. County and Attorney Defendants "procured two judgments . . . against [Plaintiff] in the same LASC proceeding" and successfully maintained these judgments on appeal. FAC ¶ 134; see also id. ¶¶ 58-60. Accordingly, the "mere sham" exception does not apply. County and Attorney Defendants' petitioning-related conduct in the prior state and federal matter are immune from suit here. Plaintiff's civil RICO and § 1983 claims against County Defendants and Attorney Defendants are thus dismissed with prejudice to the extent they rely on such conduct. See, e.g., FAC ¶¶ 103-30, 133-34 (describing Predicate Acts 1-16, 18, 19(b))

CHP Defendants also invoke the Noerr-Pennington doctrine to shield themselves from liability. As support, CHP Defendants cite to Freeman for the proposition that the "Noerr-Pennington doctrine bars claims based on alleged discovery misconduct, subornation of perjury and witness intimidation in [a] prior action." CHP MTD at 21. But unlike in Freeman, where the defendants' discovery conduct was directly incidental to their petitioning rights, here, CHP

26

Defendants do not argue they had any petitioning rights as third-party witnesses in the prior lawsuits. Indeed, discovery itself "is merely communication between parties as an aid to litigation. It is not in any sense a communication to the court and is therefore not a petition." Freeman, 410 F.3d at 1184. While CHP Defendants contend that merely responding to discovery requests and document subpoenas implicates Noerr-Pennington immunity, they cite to no authority to support this proposition. The Court does not construe Freeman so broadly. Accordingly, Plaintiff's claims against CHP Defendants are not barred by the Noerr-Pennington doctrine.

**D.    Claims Presentation**

While County Defendants seek dismissal of Plaintiff's alleged state-law claims for failure to comply with California's claims presentation requirements, see County MTD at 31-32, Plaintiff submits that he does not allege a state law fraud claim and that he brings his conspiracy to violate civil rights claim under 42 U.S.C. § 1985. See Opposition to County MTD at 25. Accordingly, County Defendants' claims presentation arguments are moot, and the Court expressly declines to rule on this issue.

**E.    RICO Claims (Counts 1 and 2)**

Plaintiff alleges that Defendants violated sections 1962(c) and 1962(d) of RICO. See FAC ¶¶ 97-102, 137-42. RICO grants a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Indeed, a RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). Thus, to state a claim for a RICO violation, a private plaintiff must allege facts showing (1) an injury to business or property and (2) a substantive violation of one or more subsections of section 1962. See id.; 18 U.S.C. § 1964(c).

27

Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) states that it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To state a claim showing a "pattern of racketeering activity," a plaintiff must allege each of these elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, 473 U.S. at 495-96; see also Turner v. Cook, 362 F.3d 1219, 1228 (9th Cir. 2004).

a.    Standing

RICO does not afford a civil remedy for all injuries caused by unlawful racketeering activity; only injuries to "business or property" are actionable. 18 U.S.C. § 1964(c). This limitation "exclude[s] recovery for personal injuries." Diaz v. Gates, 420 F.3d 897, 908 (9th Cir. 2005) (citing Oscar v. Univ. Students Co-op, Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, 506 U.S. 1020 (1992) ("[I]t is clear that personal injuries are not compensable under RICO.")).

Although some courts have concluded that incurring legal fees could establish RICO injury, those courts have done so where a plaintiff incurred fees in prior litigation and the fees were proximately caused by conduct that would qualify as a RICO predicate act. See, e.g., Handeen v. Lemaire, 112 F.3d 1339, 1354 (8th Cir. 1997) (holding that prior legal expense "qualifies as an injury to business or property that was proximately caused by a predicate act of racketeering"); Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1167 (2d Cir. 1993) ("[L]egal fees may constitute RICO damages when they are proximately caused by a RICO violation."). In contrast, courts have

not been willing to find RICO injury where the fees were incurred to pursue a RICO claim. See, e.g., Martinez v. Quality Loan Serv. Corp., 2009 WL 586725, at *9 (C.D. Cal. Feb. 10, 2009) ("[P]laintiff's claim for legal fees, the cost of filing a RICO action does not satisfy the concrete financial injury requirement"); Walter v. Pallisades Collection, LLC, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007) ("It would be illogical to allow a plaintiff to have RICO standing based on damages incurred by the plaintiff in paying his attorney to file the RICO action.").

In addition to alleging RICO injury, a plaintiff must also show that a defendant's predicate acts were the "but-for" and proximate cause of the alleged injury. Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 266-67 (1992); see also Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1168 (9th Cir. 2002) ("The key task is to determine whether this injury was 'by reason of' the [the defendants'] alleged violations, a requirement the Supreme Court has interpreted to encompass proximate as well as factual causation."). To prove that an injury is proximately caused by a RICO violation, a plaintiff must demonstrate that there is "some direct relation between the injury asserted and the injurious conduct alleged." Holmes, 503 U.S. at 268.

Here, Plaintiff alleges that "as a direct and proximate result of defendants['] actions, the plaintiff suffered economic damages in an amount no less than two million one hundred twenty five thousand dollars to defend against the sham claims and defenses of the County in the LASC action, to seek compensation for his injuries, to discover evidence that is material and relevant to his case and to establish his claims." FAC ¶ 136; see also id. ¶ 142. Plaintiff further contends that he sustained economic damages because County Defendants' "fraud and sham defenses exhausted him financially . . . a strategy devised by the [County Defendants] to harass, intimidate and coerce [Plaintiff] to drop his pursuit of the truth as to what caused the collision in the LASC

proceeding . . . and to hinder any consequent reporting to federal authorities."
Opposition to County MTD at 19. To the extent that Plaintiff alleges RICO
violations to seek "compensation for his injuries," see FAC ¶¶ 136, 142,
Plaintiff lacks standing. See Diaz, 420 F.3d at 908 (excluding recovery under
RICO for personal injuries). The Court also declines to confer standing to
Plaintiff through his allegations of monetary damages incurred in the instant
RICO action, even if used "to discover evidence that is material and relevant
to his case and to establish his claims." FAC ¶¶ 136, 142; see also Martinez,
2009 WL 586725, at *9 (noting cost of filing RICO action does not satisfy
injury requirement).

　　　As to Plaintiff's remaining alleged monetary injury, Plaintiff has not
stated—beyond conclusory allegations—how Defendants' conduct directly or
proximately caused Plaintiff to incur the substantial alleged legal fees in the
state-court action. Notably, Plaintiff admits that he initiated the state-court
lawsuit against the County in 2012, see FAC ¶ 30, and states that he
spearheaded extensive discovery efforts in that action, see id. ¶¶ 55-57. County
Defendants' legal defense did not cause—legally or factually—Plaintiff to incur
such legal fees himself. And to the extent Plaintiff's RICO claims rely on facts
discovered in the subsequent federal proceeding, see, e.g., FAC ¶¶ 103-07, 112-
18, 122-27, it would be impossible for these subsequently discovered facts to
have directly or proximately caused Plaintiff to incur legal fees in the earlier
state-court matter.

　　　Accordingly, the Court finds that Plaintiff fails to allege RICO injury
based on the allegations that he incurred legal expenses when he pursued the
state-court matter. While Plaintiff's failure to allege a cognizable injury is itself
dispositive of his RICO claims, even if the Court assumes that his harm
allegations were sufficient, Plaintiff still fails to allege viable civil RICO and
RICO conspiracy claims.

b.    RICO Elements

Plaintiff must allege conduct of an enterprise through a pattern of racketeering activity to state a proper § 1962(d) claim. See Chaset v. Fleer/Skybox Intern., LP, 300 F.3d 1083, 1087 (9th Cir. 2002). Plaintiff fails to do so here.

1.    Enterprise

To plead the existence of an enterprise under civil RICO, a plaintiff must plead that the enterprise has: "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." See Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (citing Boyle v. United States, 556 U.S. 938, 946 (2009)). Here, the Plaintiff merely alleges that "all Defendants did associate with a RICO enterprise of government entities, the State of California and its political subdivision the County of Los Angeles who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce. Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity . . . ." FAC ¶¶ 98-99. These conclusory assertions are insufficient to plead an enterprise. See Iqbal, 556 U.S. at 679, 681. At a minimum, Plaintiff must allege how County Defendants, CHP Defendants, and Attorney Defendants "associated together for a common purpose of engaging in a course of conduct . . . [and allege] evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." Doan v. Singh, 617 F. App'x 684, 686 (9th Cir. 2015) (internal citations omitted). But the FAC fails to do even that. Instead, Plaintiff alleges "only a series of disconnected incidents, each involving a subset of the overall group of defendants, with no clear indication of a unified agenda." Comm. to Protect Our Agric. Water v. Occidental Oil &

31

Gas Corp., 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017); see also Doan, 617 F. App'x at 686 (finding no RICO enterprise where complaint did not state clearly what "each individual did, when they did it, or how they functioned together as a continuing unit").

Plaintiff's supplemental allegations in his opposition briefs fare no better. Therein, he clarifies that the RICO enterprises are the "State of California and its political subdivision, the County of Los Angeles and their counsel Hurrell Cantrall." Opposition to County MTD at 10. "These entities' purpose is the governance of the State of California and they have had established, long-standing and presumably permanent relationship [sic] as provided by the Constitution of the State of California." Id. These additional allegations remain insufficient to suggest that County Defendants acted with a common purpose unrelated to the ordinary requirements of governance. See Occidental Oil, 235 F. Supp. 3d at 1175 (finding no "enterprise" where plaintiffs pleaded no specific facts suggesting defendants acted with a common purpose beyond "ordinary business or government aims"); In re Jamster Mktg. Litig., No. 05-819, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (RICO claims not adequately pleaded where after plaintiff's legal conclusions were set aside, all that remained was "conduct consistent with ordinary business conduct and an ordinary business purpose"). Because Plaintiff has alleged only conclusory and "bare assertions" of a pattern of racketeering activity, Plaintiff has not adequately pleaded the existence of a RICO enterprise among Defendants. See Doan, 617 F. App'x at 686 (citing Iqbal, 556 U.S. at 681).

### 2. Pattern of Racketeering Activity

"A 'pattern of racketeering activity' consists of at least two acts of racketeering activity," which is any one of the acts listed in 18 U.S.C. § 1961(1), within a 10-month period. Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1469 (9th Cir. 1987) (quoting 18

U.S.C. § 1961(5)). To constitute a pattern, a plaintiff must show "that the racketeering practices are related, and that they amount to or pose a threat of continued criminal activity," and are not merely "sporadic activity." H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). "Racketeering predicates are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." United States v. Freeman, 6 F.3d 586, 596 (9th Cir. 1993) (quoting H.J., Inc., 492 U.S. at 240). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the 'pattern'] requirement." H.J. Inc., 492 U.S. at 242.

While the FAC alleges twenty predicate acts, they generally fall into one of following categories: concealing or omitting information in the state-court lawsuit related to the permitting and design or construction of the road; destruction of a road sign and concealment of the same in the state-court lawsuit; introduction of false or misleading testimony and evidence regarding signage in the state-court lawsuit; failure to produce various department reports and communications regarding the accident in the state-court lawsuit; production of doctored collision reports in the state and federal lawsuits; tampering with evidence in the state-court proceeding with intent to obstruct justice; general fraud in the state-court lawsuit; and fabrication of evidence that Plaintiff is mentally ill. See FAC ¶¶ 103-36. Among these allegations, the only predicate acts that may implicate "racketeering activity" under 18 U.S.C. § 1961(1)(B) are allegations relating to obstruction of justice in a federal court proceeding (§ 1503) and alteration or destruction of evidence with the intent to impair use in an official proceeding (§ 1512). See Bhardwaj v. Pathak, 668 F. App'x 763, 764-65 (9th Cir. 2016) (citing O'Malley v. N.Y.C. Transit Auth., 896 F.2d 704, 708 (2d Cir. 1990) (obstruction of justice under 18 U.S.C. § 1503 limited to interference with federal-court proceedings)).

33

Without delving into whether or not Defendants' alleged conduct constitutes "racketeering activity" under the statute, even if this were the case, Plaintiff has not stated either in the FAC or in his opposition briefing how such conduct amounted to any "pattern" of racketeering activity—which requires some risk of future criminal conduct by the same actors. See H.J. Inc., 492 U.S. at 239. Plaintiff argues, in conclusory fashion that "[t]hese acts are all related and were designed to achieve the same purpose of hindrance about the reporting and prosecution of federal crimes" and that Defendants "acted in concert." Opposition to County MTD at 19. But Plaintiff has not alleged how these isolated transactions, involving only him, suggest a threat of continuing illegal activity. See Medallion Television Enters., Inc. v. SelecTV of Cal., Inc., 833 F.2d 1360, 1365 (9th Cir. 1988) (distinguishing between isolated transactions involving single victims with no indication of further predicate acts with instances involving "ongoing schemes, numerous victims, and a risk of continuing illegal activity"). Plaintiff's conclusory allegation that "[he] is not the only victim of the fraud" is not sufficient to allege a pattern of racketeering by the Defendants. Opposition to County MTD at 19; see also Durning v. Citibank, Intern., 990 F.2d 1133, 1139 (9th Cir. 1993) (citing Medallion, 833 F.2d at 1365, as holding "no pattern under RICO where defendant was the single victim of alleged fraud"). Accordingly, Plaintiff has not sufficiently pleaded a pattern of racketeering activity by Defendants. Because it is not absolutely clear that these factual deficiencies cannot be cured by amendment, unless otherwise noted herein, Plaintiff's RICO claims are dismissed with leave to amend.

Moreover, as Plaintiff's alleged injury is insufficient to confer standing to bring a RICO claim, and he has not stated a plausible RICO violation regardless, Plaintiff's claim for conspiracy to violate RICO under 28 U.S.C. 1962(d) also fails. See Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir.

2000) (RICO conspiracy claim fails to state a claim where underlying substantive RICO claim fails).

**F.    § 1983 Claims (Counts 3, 4, 5, and 6)**

42 U.S.C. § 1983 provides a method by which individuals can sue for violations of their federal rights. Cortez v. Cty. of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2002). To establish a claim under § 1983, a plaintiff must prove that the violation was committed by a "person" acting under the color of State law. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). The other requisite element is that a right secured by the Constitution or laws of the United States was violated. Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). Here, the Parties do not dispute that County Defendants acted under color of law. Thus, the Court's inquiry focuses on whether they deprived Plaintiff of constitutional rights under the Fourteenth Amendment. Attorney Defendants, however, contend that they did not act under color of state law. Accordingly, the Court addresses that issue at the outset.

a.    § 1983 Claims Against Attorney Defendants

"While generally not applicable to private parties, a § 1983 action can lie against a private party when 'he is a willful participant in joint action with the State or its agents.'" Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)). "The Supreme Court has articulated four tests for determining whether a non-governmental person's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." Ohno v. Yasuma, 723 F.3d 984, 995 (9th Cir. 2013) (citations and internal editorial marks omitted). "Most relevant here are the public function and joint action tests." Id. (footnote and internal quotations omitted). "The former treats private actors as state actors when they perform a task or exercise powers

35

traditionally reserved to the government. The latter focuses on whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Id. at 995-96 (citations and internal quotation omitted).

"'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or otherwise has so far insinuated itself into a position of interdependence with the non-governmental party that it must be recognized as a joint participant in the challenged activity." Id. at 996 (citations and internal editorial marks omitted). "A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights." Fonda v. Gray, 707 F.2d 435, 437 (9th Cir. 1983). But "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)); see also Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991) ("Conclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.") (internal citation omitted); Simmons v. Sacramento Cty. Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) (finding no action under "color of state law" by prevailing party's private attorney and noting that "conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process are insufficient"); accord Briley v. California, 564 F.2d 849, 855 (9th Cir.1977) ("We have repeatedly held that a privately-retained attorney does not act under color of state law for purposes of actions brought under the Civil Rights Act.").

Here, Attorney Defendants contend that as lawyers to the County in the state-court action, they did not act under color of state law for purposes of

36

§ 1983. See Attorney Defendants MTD at 29-32. The Court agrees. In his opposition, Plaintiff alleges generally that "Williams, Hurrell Cantrall LLP and [Dulay] acted in concert to defraud [Plaintiff] and the LASC of his right to a fair hearing when they schemed to conceal [Williams's] dual role as a witness and advocate." Opposition to Attorneys MTD at 20-21. Specifically, Plaintiff argues that Williams "gave 'legitimacy' to fraudulent photographs," "reviewed documents that the County produced before turning them over to the plaintiff," and produced doctored SWITRS. Id. at 21. These additional allegations, however, do not clarify how Attorney Defendants' conduct amounts to a "joint action" with the County or how the County has "so far insinuated itself into a position of interdependence" with Attorney Defendants such that they are "joint participant[s]" in unconstitutional conduct. Ohno, 723 F.3d at 996. Beyond stating in conclusory fashion that "[t]he County encouraged [Attorney Defendants'] conduct" and "gladly accepted the benefit of [Williams's] conduct," Plaintiff alleges no actual factual bases to support or suggest that Attorney and County Defendants jointly acted to violate Plaintiff's constitutional rights. Allegations of ordinary legal advocacy on the County's behalf are insufficient to state a claim that Attorney Defendants were acting under color of state law. See Schucker v. Rockwood, 846 F.2d 1202, 1205 (9th Cir. 1988) ("Invoking state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement"). Accordingly, Plaintiff's § 1983 claims against Attorney Defendants are dismissed.

b. Due Process

As to County Defendants, while the FAC is itself unclear and phrased in conclusory fashion, Plaintiff appears to attempt to allege a procedural due process claim that County Defendants used their "government powers" and "taxpayers['] money . . . to cheat [Plaintiff] out of a fair" result in the state-

court action. <u>See</u> Opposition to County MTD at 21. Specifically, Plaintiff contends that County Defendants failed to "comply[] with the rules of civil procedure[] and government ethics requiring transparency and integrity." <u>See id.</u>

A procedural due process claim requires two "distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." <u>Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.</u>, 149 F.3d 971, 982 (9th Cir. 1998). As pleaded, the FAC does not suggest that Plaintiff was denied any procedural protections. In the state-court matter, Plaintiff had ample opportunity to propound document requests on various witnesses, <u>see</u> FAC ¶ 57, contest the County's motion for summary judgment, <u>see id.</u> ¶ 48, take depositions, <u>see id.</u> ¶ 49, attempt to broach the signage tampering issue with the trial court, <u>see id.</u> ¶ 53, and appeal the outcome of the litigation to the California Court of Appeal and California Supreme Court, <u>see id.</u> ¶ 59. Moreover, the County's core values and "affirmation" statement on its website do not themselves constitute a constitutionally protected liberty interest implicating the Fourteenth Amendment. <u>See</u> Opposition to County MTD at 21 (citing FAC ¶ 7). Save for conclusory allegations of wrongdoing, Plaintiff has not pleaded a plausible violation of his procedural due process rights. Thus, the Court dismisses Plaintiff's § 1983 claim to the extent it stems from alleged violations of procedural due process.

c.   <u>Equal Protection</u>

In order to state a claim under § 1983 for "a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001) (citing <u>Barren v. Harrington</u>, 152 F.3d 1193,

38

1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." <u>Maynard v. City of San Jose</u>, 37 F.3d 1396, 1404 (9th Cir. 1994). Alternatively, a plaintiff may allege facts showing that he has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment. <u>See</u> <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam); <u>Squaw Valley Dev. Co. v. Goldberg</u>, 375 F.3d 936, 944 (9th Cir. 2004), <u>overruled on other grounds by</u> <u>Action Apt. Ass'n v. Santa Monica Rent Control Bd.</u>, 509 F.3d 1020, 1025 (9th Cir. 2007). However, this type of equal protection claim does not arise from state actions that "by their nature involve discretionary decision[-]making based on a vast array of subjective, individualized assessments." <u>Towery v. Brewer</u>, 672 F.3d 650, 660 (9th Cir. 2012) (per curiam) (citing <u>Engquist v. Oregon Dep't of Agric.</u>, 553 U.S. 591, 603 (2008)). Thus, "the existence of discretion, standing alone, cannot be an Equal Protection violation." <u>Id.</u> at 660-61 ("Absent any pattern of generally exercising the discretion in a particular manner while treating one individual differently and detrimentally, there is no basis for Equal Protection scrutiny under the class-of-one theory.").

Here, Plaintiff alleges that County Defendants and Attorney Defendants "targeted [him] for reconsideration of the May 27, 2014 [summary judgment] ruling out of racial and national origin animus." FAC ¶ 150. As support, Plaintiff contends that County Defendants' attorney "repeatedly questioned [Plaintiff] about his national origin" during a deposition in the state-court proceeding and that the County settled its state-court matter with the other accident victim while refusing to do the same with Plaintiff. FAC ¶ 151; <u>see also</u> <u>id.</u> ¶¶ 152-54. These factual allegations do not state a plausible claim that County Defendants acted with intent or purpose to discriminate against Plaintiff based on his race or national origin. Aside from conclusory

allegations, Plaintiff states no facts in support of his theory that the County treated Plaintiff differently from the other victim on account of Plaintiff's race and national origin. Moreover, even construing Plaintiff's deposition transcript excerpts in the light most favorable to him, the Court sees no evidence or suggestion of discriminatory intent or purpose.[11] See FAC ¶ 152 (disputing as a matter of law whether citizenship status affects damages recovery). Accordingly, Plaintiff's § 1983 claim is dismissed insofar as it is based on a violation of his rights under the Equal Protection Clause of the U.S. Constitution.

      d.    *Monell* Claim

      Plaintiff next alleges a Monell claim against the County only. See id. ¶¶ 158-64. To hold a county liable under § 1983 for the violation of a constitutional right, a plaintiff must establish liability under Monell v. Dep't. of Soc. Servs. of N.Y., 436 U.S. 658 (1978). Municipal defendants "may be held liable as 'persons' under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent the official policy, inflicts the injury.'" Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Monell, 436 U.S. at 694). Because there is no respondeat superior liability under § 1983, a municipality is only liable for injuries that arise from an official policy or custom. See Monell, 436 U.S. at 694. A plaintiff may establish municipal liability by proving "that a [county] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity."

---

[11] Finding no indicia of discriminatory intent or purpose, the Court expressly declines to reach the question of whether the County's line of questioning at Plaintiff's deposition is protected under California's litigation privilege, Code of Civil Procedure § 47(b). See County MTD at 22.

<u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation

marks and citations omitted). In addition, a plaintiff must show that the policy

was "(1) the cause in fact and (2) the proximate cause of the constitutional

deprivation." <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) (citations

omitted). A plaintiff may also establish municipal liability by demonstrating

that the alleged constitutional violation was caused by a failure to train

municipal employees adequately. <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378,

388-89 (1989).

      Here, the FAC fails to allege a custom, policy, or practice sufficient to

pass muster under <u>Monell</u>. Plaintiff alleges that the County had a policy of

permitting employees to "tamper with [or] destroy evidence, mislead a plaintiff

in litigation to prevent him/her from asserting claims and defenses in a private

litigation involving matters of public concern," to effectively "deny[] a person

injured on County property just compensation," and to "obstruct justice" by

"cover[ing] up the criminal negligence of state actors in connection with road

safety matters." FAC ¶ 162. Plaintiff further contends that the County failed to

"adequately train and supervise [Department of Public Works] employees,

which amounted to "deliberate indifference to the rights of [Plaintiff]," and

"failed to supervise the actions of [its in-house counsel to] ensure that outside

counsel does not cause a deprivation of civil rights to anyone, including a

plaintiff in a litigation." <u>Id.</u> ¶ 163. None of these conclusory allegations,

however, suffice factually to suggest a practice that is so "persistent and

widespread" that it constitutes a "permanent and well settled [county-wide]

policy." <u>Monell</u>, 436 U.S. at 691. To the contrary, Plaintiff has only alleged the

County's conduct in a single incident—his own case. These allegations alone

are insufficient to plead a <u>Monell</u> claim. <u>See</u> <u>Trevino</u>, 99 F.3d at 918 ("Liability

for improper custom may not be predicated on isolated or sporadic incidents; it

must be founded upon practices of sufficient duration, frequency and

consistency that the conduct has become a traditional method of carrying out policy."); <u>Meehan v. L.A. Cty.</u>, 856 F.2d 102, 107 (9th Cir. 1988) (holding that two incidents were insufficient to establish a practice, policy or custom for <u>Monell</u> purposes). Thus, Plaintiff's <u>Monell</u> claim against the County must be dismissed.

   e.  <u>Official Capacity Claims</u>

   Plaintiff has also sued Cline, Dulay, Farber, and Brazal in their official capacities as employees or representatives of the County. <u>See</u> FAC ¶¶ 8, 11-13. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985); <u>see also</u> <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991). Thus, Plaintiff's claims against Cline, Dulay, Farber, and Brazal in their official capacity are tantamount to claims against the County. As discussed above, Plaintiff has failed to state a claim against the County. The FAC therefore fails to state a claim against these individual defendants in their official capacities.

   f.  <u>§ 1983 Conspiracy</u>

   Because Plaintiff fails to state an underlying constitutional claim, his allegations are insufficient to state a claim for conspiracy. <u>See</u> <u>Woodrum v. Woodward Cty.</u>, 866 F.2d 1121, 1126 (9th Cir. 1989) (no liability for conspiracy under § 1983 "unless there is an actual deprivation of civil rights"); <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1260 (11th Cir. 2010) ("[P]laintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right"); <u>Thore v. Howe</u>, 466 F.3d 173, 179 (1st Cir. 2006) ("[W]hile conspiracies may be actionable under section 1983, it is necessary that there have been . . . an actual deprivation of a right secured by the Constitution and laws" (quoting <u>Landrigan v. City of Warwick</u>, 628 F.2d

42

736, 742 (1st Cir. 1980))).

Even if the Court assumes that Plaintiff sufficiently pleaded his underlying constitutional claims, Plaintiff still has not alleged a plausible conspiracy claim under § 1985. To do so, plaintiff must allege specific facts showing two or more persons intended to accomplish an unlawful objective of causing plaintiff harm and took some concerted action in furtherance thereof. See Gilbrook v. City of Westminster, 177 F.3d 839, 856-57 (9th Cir. 1999); Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998) (to state claim for conspiracy under § 1983, plaintiff must allege facts showing an agreement among the alleged conspirators to deprive him of his rights); Delew v. Wagner, 143 F.3d 1219, 1223 (9th Cir. 1998) (to state claim for § 1983 conspiracy, plaintiff must allege facts from which such an agreement to deprive him of rights may be inferred); Burns v. Cty. of King, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam) (conclusory allegations of conspiracy insufficient to state a valid § 1983 claim); Karim-Panahi, 839 F.2d at 626. A plaintiff must plead with particularity which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of the plaintiff's constitutional rights. See Harris v. Roderick, 126 F.3d 1189, 1195-96 (9th Cir. 1997).

Here, Plaintiff has not alleged facts sufficient to state a conspiracy claim under § 1983. In conclusory fashion, Plaintiff alleges that from "the day of the collision" through "the date of [the FAC], there was an agreement between the individual defendants" to commit the predicate acts listed in the FAC. FAC ¶ 166. Plaintiff further states, without additional detail, that "[D]efendants became members of the conspiracy knowing its objects and intending to help accomplish it" and that "[e]ach defendant committed one of the predicate acts . . . and the acts alleged [as the object of the conspiracy] for the purpose of carrying out the conspiracy." Id. ¶¶ 167, 169. These are conclusory allegations of a conspiracy and do not state with particularity "which defendants

43

conspired [with whom], how they conspired and how the conspiracy led to a deprivation of [Plaintiff's] constitutional rights." <u>Harris</u>, 126 F.3d at 1196. Accordingly, Plaintiff's conspiracy claim is also subject to dismissal.

**G.  ADA Claim (Count 7)**

Attorney Defendants contend that Plaintiff failed to state a claim under the Americans with Disabilities Act. <u>See</u> Attorneys MTD at 32-33.

Title III of the ADA provides in part that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To survive a motion to dismiss, Title III requires a plaintiff to plead the following elements: (1) the plaintiff was disabled within the meaning of the Act; (2) the plaintiff was discriminated against on the basis of that disability; and (3) the defendant owns, leases or leases to or operates a place of public accommodation. <u>See</u> <u>id.</u> Under Title III, "office[s] of an accountant or lawyer" are considered public accommodations. 42 U.S.C. § 12181(7)(F).

To be liable under Title III of the ADA, an entity need not "own" the location, but may merely "operate" a place of public accommodation in that space. <u>See</u> <u>Lentini v. Cal. Ctr. for the Arts</u>, 370 F.3d 837, 849 (9th Cir. 2004). To "operate" is to "put or keep in operation, to control or direct the functioning of, or to conduct the affairs of; manage." <u>Id.</u> at 849 (internal citations and quotations omitted).

Here, Plaintiff has failed to plead a plausible ADA claim against Attorney Defendants. As an initial matter, Plaintiff fails to specify the provision of the ADA under which his claim is brought. And although Plaintiff later clarifies that he was denied enjoyment of the facilities of a public accommodation—i.e., Attorney Defendants' offices—his new contentions

conflict with those already alleged. Notably, Plaintiff alleges in his FAC that Plaintiff was not permitted to "pass through the security in the downstairs lobby of the high rise building that hosts the law firm Hurrell Cantrall LLP . . . [Attorney Defendants] directed their counsel of record . . . to not let [Plaintiff] up to the offices and to conduct the meet and confer in the downstairs lobby. . . The meet and confer took place in the downstairs lobby of the building near the security station." FAC ¶¶ 172, 174. Plaintiff now suggests that "by holding the meeting in the lobby, the defendants acted as if the lobby was included in the rental of their own offices and/or an extension of their offices" and "serves as the function of a common reception area where clients and customers are made to wait before meeting with the attorneys." Opposition to Attorneys MTD at 22. Notwithstanding these supplemental allegations, it remains Plaintiff's burden to state a claim for relief that is plausible on its face. Reading the allegations of the FAC plainly, the Court concludes that the "downstairs lobby of the high rise building . . . near the security station" is an area distinct from Hurrell Cantrall LLP's office. See FAC ¶ 172 (alleging counsel prohibited Plaintiff from going "up to the offices" of Attorney Defendants). Because Plaintiff has failed to state sufficient facts in support of his claim that the lobby area of the office building is a "public accommodation" under the ADA, the Court dismisses Plaintiff's claim without prejudice.

**H.    County Defendant's Special Motion to Strike (Anti-SLAPP)**

California's anti-SLAPP statute allows a defendant to bring a motion to strike and recover attorney's fees where the complaint "arises from acts in furtherance of a person's right of petition or free speech under United States or California Constitution . . . ." Cal. Civ. Proc. Code § 425.16. In the Ninth Circuit, defendants sued in federal courts can also bring anti-SLAPP motions to strike state-law claims and are entitled to attorneys' fees and costs if they prevail. See United States ex rel. Newsham v. Lockheed Missiles & Space Co.,

45

190 F.3d 963, 971 (9th Cir. 1999). But where a plaintiff's claim implicates a federal question, district courts have been reluctant to apply the anti-SLAPP statute because doing so would frustrate substantive federal rights. See, e.g., Summit Media LLC v. Los Angeles, 530 F. Supp. 2d 1084, 1094 (C.D. Cal. 2008); Globetrotter Software, Inc. v. Elan Comput. Grp., Inc., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999); In re Bah, 321 B.R. 41, 46 (9th Cir. BAP 2005) ("We . . . agree with the Globetrotter court that the anti-SLAPP statute may not be applied to matters involving federal questions . . . .").

Here, County Defendants contend that Plaintiff's state-law fraud, conspiracy to commit fraud, and conspiracy to violate civil rights causes of action arise from free-speech activities and are subject to anti-SLAPP. See County MTD at 10-14. But Plaintiff has not pleaded a state-law fraud or conspiracy to commit fraud claim. See Dkt. 86 ("Anti-SLAPP Opposition") at 8 ("[Plaintiff] amended his complaint and removed the fraud and conspiracy to commit fraud counts. In error, he left the claim[s] on the caption page."). Further, Plaintiff clarified in his opposition to the County's motion to dismiss that his conspiracy to violate civil rights cause of action (Count 6) is brought under 42 U.S.C. § 1985(3). See Opposition to County MTD at 25.

In sum, County Defendants have not shown how any of Plaintiff's causes of action are anything but federal question claims. As such, the Court declines to invoke California's anti-SLAPP statute to specially strike any of Plaintiff's claims. County Defendants' special motion to strike is denied.

///
///
///
///
///
///

46

# VI.

## CONCLUSION

IT THEREFORE IS RECOMMENDED that the District Judge issue an Order: (1) approving and accepting this Final Report and Recommendation; (2) granting CHP Defendants' motions to dismiss (Dkts. 54, 70, 84) with prejudice as to Plaintiff's claims arising from Predicate Acts 14-15 and without prejudice as to all remaining claims; (3) granting County Defendants' motion to dismiss and motion to strike (Dkt. 49) with prejudice as to Plaintiff's civil RICO, § 1983 civil rights, and conspiracy claims arising from Predicate Acts 1-16, 18, 19(b) and otherwise without prejudice as to all remaining claims; (4) granting Attorney Defendants' motions to dismiss (Dkts. 50, 61) with prejudice as to Plaintiff's civil RICO, § 1983 civil rights, and conspiracy claims arising from Predicate Acts 1-16, 18, 19(b) and without prejudice as to all remaining claims; and (5) denying County Defendants' anti-SLAPP special motion to strike (Dkt. 52).[12]

Dated:  September 6, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

_____

[12] Plaintiff's Ex Parte Applications (Dkts. 105 and 117) and Motion for Leave to File First Supplementation to the FAC (Dkt. 110) are denied without prejudice as moot. Plaintiff may incorporate supplemental allegations in a Second Amended Complaint provided that those allegations comport with the Court's prior rulings and rulings herein.